**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zachary J. Mezquita,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-16-01763-PHX-NVW<br><br>**ORDER** |

Plaintiff Zachary J. Mezquita seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in January 31, 1975. He has a high school education. From 1997 to 1999, he worked as a rig hand servicing oil wells. In 1998, he began a three-year apprenticeship in glazing, which he was able to complete, and worked on and off as a glazer from 1997 to 2011.

In November 2000, Plaintiff was involved in an auto accident, resulting in fractures of his left femur, cervical spine, shoulder, finger, thumb, and multiple ribs. He

underwent multiple surgeries, including putting a rod, pin, and nail into the left femur, which was eventually removed. Plaintiff alleges numerous impairments, including back injury, neck injury with a C1 fracture, left knee injury, depression, anxiety, impaired cognitive skills, memory loss, finger problems due to injuries, and being quick to anger.

On December 13 and 18, 2012, Plaintiff applied for, respectively, disability insurance benefits and supplemental security income, alleging disability beginning November 22, 2000. The alleged onset date was amended to March 1, 2011. On September 26, 2014, Plaintiff appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified. On November 19, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On June 6, 2016, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001); *Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall,

the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2011, and that he has not engaged in substantial gainful activity since March 1, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: cervical spine fracture status post-treatment, degenerative disc disease of the cervical spine, fractured left femur status post-surgery

and rod placement, scapular fracture of the shoulder status post-treatment, and a hip dislocation status post-surgery on the left hip. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, and/or scaffolds; occasionally climb ramps and/or stairs, crouch, kneel, and crawl; and frequently reach overhead with the left upper extremity. The claimant should avoid concentrated exposure to hazard[ou]s machinery and unprotected heights. The claimant can understand, carry out and remember simple instructions and procedures, and can make simple work related decisions.

The ALJ further found that Plaintiff is unable to perform any of his past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v.*

*Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record). "Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship,

frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5).

The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### 2. Treating Physician A. Clarke Ruttinger, D.O.

Dr. Ruttinger opined that Plaintiff can lift and carry less than ten pounds, sit less than two hours in an eight-hour work day, and stand/walk less than two hours in an eight-hour work day. He opined that it is medically necessary for Plaintiff to alternate between sitting, standing, and walking after one to twenty minutes and to rest one to four minutes with each position change. He opined that Plaintiff can use both feet continuously, but can use either hand only occasionally in a work setting. Dr. Ruttinger opined that Plaintiff would miss work 6+ days per month due to his medical condition. He stated that Plaintiff's prescribed medications (specifically methadone) caused dizziness, impaired

judgment, and fatigue. Nevertheless, Plaintiff testified that he can lift 30-40 pounds, walk about a half mile, drive, read, cook, and "help around the house whatever I can do."

The ALJ assigned no weight to Dr. Ruttinger's June 20, 2013 and August 13, 2014 opinions for the following reasons: (1) they are not consistent with the medical records and objective tests; (2) they are not supported by Dr. Ruttinger's clinical findings; (3) they are based upon Plaintiff's subjective complaints; (4) they are contradicted by opinions of the consultative examiners, the State agency evaluators, and a treating doctor; (5) they are inconsistent with Plaintiff's activities of daily living; and (6) Dr. Ruttinger is a primary care physician, not an orthopedic specialist. The ALJ cited to evidence of record for each reason. These are clear, convincing, specific, and legitimate reasons for assigning no weight to Dr. Ruttinger's opinions.

### 3. Examining Psychologist Adriana Tarazon Weyer, Ph.D.

Plaintiff contends that the ALJ erred by ignoring the part of Dr. Weyer's opinion that Plaintiff "may perform better when he is receiving supervision, including explanations of tasks, extra time to complete tasks, and redirection as needed." But Dr. Weyer did not say that Plaintiff *requires* close supervision, additional explanations, extra time, and redirection.

Dr. Wyer's notes indicate she examined Plaintiff on March 8, 2013, and that Plaintiff said he sustained a skull fracture in November 2000 and had "been struggling ever since to get back to work." Dr. Weyer opined that Plaintiff "was able to stay on task and maintain attention during the exam," but "may present with moderate difficulties in his ability to carry out detailed instructions and maintain attention and concentration for extended periods secondary to cognitive difficulties stemming from brain injury." Dr. Weyer did not note that Plaintiff worked until 2011 despite the brain injury in 2000.

The ALJ adequately incorporated Dr. Weyer's opinions in the residual capacity assessment, which states: "The claimant can understand, carry out and remember simple

- 7 -

instructions and procedures, and can make simple work related decisions." The ALJ did not err in considering Dr. Weyer's opinion.

### B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR96-7p. Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.*

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Second, the ALJ found Plaintiff's "statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."

Plaintiff testified that the most serious health problems that affected his ability to work are his lower back, left knee, and neck. He said that his lower back problem usually prevents him from sitting or standing more than a half hour at a time without alternating sitting and standing or lying down. Yet he is able to sit in a recliner and watch television or read recipes. Plaintiff also testified that he can lift 30-40 pounds, walk about a half mile before resting, drive, read cooking books, cook, play video games, and "help around the house whatever I can do." He uses an exercise ball to do core-strengthening exercises.

The ALJ stated that Plaintiff's credibility was adversely affected by inconsistent statements about the severity of his conditions. He noted that Plaintiff previously had reported being able to walk only a couple feet before needing to stop and rest despite contrary testimony. The ALJ also noted that Plaintiff's subjective complaints were inconsistent with objective evidence, which showed only mild degenerative changes in the lumbar and cervical spine and did not indicate any condition likely to cause the severity of pain Plaintiff alleged. Plaintiff's physical examinations showed normal strength, sensory response, and ability to walk and no issues with his knees. The ALJ also found that Plaintiff had positive urine drug screenings with non-prescribed drugs and had shown a pattern of drug-seeking behavior, but had denied any substance abuse.

The ALJ found that Plaintiff's activities of daily living suggest a higher level of functioning than alleged. The ALJ found that Plaintiff's ability to shop, pay bills, prepare meals, clean, do laundry, drive independently, go to church, go out alone, play video games, and maintain an exercise regimen suggested independence, appropriate planning, hand-eye coordination, and physical capacity to complete tasks and perform work-related activities. Further, Plaintiff had been able to care for his mother.

Thus, the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's subjective symptom testimony less than entirely credible.

### C. The ALJ Did Not Err by Failing to Find Plaintiff Had Additional Severe Impairments and/or to Fully Account for These Impairments.

Plaintiff contends that the ALJ committed legal error by not finding the following conditions to be severe impairments: multiple rib fractures, right finger and left thumb fractures requiring surgery, left knee cruciate ligament sprain, headaches, and lumbar spine, left knee, left leg, left shoulder, and arm/hand abnormalities. The ALJ gave specific reasons supported by evidence of record for finding each of these conditions not to be severe.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 26th day of September, 2017.

_____
Neil V. Wake
Senior United States District Judge